**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4453-18T1

PRISTINE PHARMA
CORPORATION,
a corporation of the State of New
Jersey

      Plaintiff,

v.

CISPHARMA, INC., a corporation
of the State of New Jersey,
SRINIVAS R. PARUCHURI,
RAVINDER ANNAMANENI,
MUKESH DESAI, PEDDANA
GUMMUDAVALLI, SUNEPTA V.
ADUSOM, DAS LAKKIRAJAU,
RANJA NAMBURI, HASMUKH
PATEL (COO), HASMUKH PATEL
(QC), UDAYA SANKAR, ANITA
PATEL, VISHWESWARA
KADIYAM, VILAS NIRANJAN
SHAH, JYOTI SUBODH SHAH,

      Defendants,

_____

RAVINDER ANNAMANENI and
SRINIVAS PARUCHURI,

Cross-Plaintiffs/Respondents,

v.

CISPHARMA, INC.,

Cross-Defendant,

and

MUKESH DESAI, HASMUKH PATEL, and JYOTI SUBODH SHAH,

Cross-Defendants/Appellants.

_____

RAVINDER ANNAMANENI and SRINIVASA R. PARUCHURI,

Third-Party Plaintiffs,

v.

VENKAT KAKANI,

Third-Party Defendant.

_____

Argued telephonically September 15, 2020 - Decided September 25, 2020

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1112-13.

A-4453-18T1

Andrew T. Fede argued the cause for appellants (Archer & Greiner, attorneys; Patrick Papalia and Tyler Wicks on the briefs).

Susheela Verma argued the cause for respondents.

PER CURIAM

Mukesh Desai (Desai), Hasimukh Patel (Patel), and Jyoti Subodh Shah (Shah) appeal from orders entered by the Law Division, which granted motions for summary judgment by Ravinder Annamaneni (Annamaneni) and Srinivasa Paruchuri (Paruchuri) on their indemnification claims and awarded them attorney's fees and costs. We affirm.

## I.

We briefly summarize the relevant facts and procedural history. In May 2011, Pristine Pharma Corporation (Pristine) and Cispharma, Inc. (Cispharma) entered into an agreement to provide International Trade Association of America, Inc. (ITA) certain over-the-counter pharmaceutical products, including aspirin (the OTC Agreement).

Under the OTC Agreement, Cispharma was responsible for manufacturing and bottling the pharmaceutical products, and Pristine was responsible for labeling, boxing, and preparing the products for delivery to ITA. From November to December 2011, Cispharma delivered various lots of aspirin

to Pristine, which were provided to ITA.  In January 2012, lots of the aspirin were delivered to certain ports in Russia.

On January 27, 2012, Desai, Patel, Shah and others entered into an agreement to sell their shares of common stock in Cispharma and their membership interests in another entity to Annamaneni and Paruchuri for $2,329,977 (the Purchase Agreement).  Annamaneni and Paruchuri thus acquired about sixty percent of Cispharma's issued and outstanding shares of common stock.

According to the Purchase Agreement, the shares and membership interests were transferred to the buyers free and clear of any liens or encumbrances, except for two loans.  The Purchase Agreement states that the buyers "shall be included on the existing guarantees for these two loans, as shareholders and individuals, and the process to include the [b]uyer[s] on such documents shall commence immediately and at the discretion of the lenders."

The Purchase Agreement further provides in relevant part that the sellers and the buyers shall

> defend, indemnify and hold harmless the other . . . from and against any claim, damage, liability, loss, cost or expense (including, without limitation, reasonable attorneys' fees) arising directly or indirectly out of:

4

(i) any material failure by the indemnifying party or parties to perform their obligations as set forth in this Agreement of the Escrow Agreement;

(ii) any material inaccuracy or breach of any of the indemnifying party or parties representations or warranties made in this Agreement, and

(iii) any and all actions, suits, litigations, arbitrations, proceedings, investigations, claims or liabilities of whatever nature arising out of any of the foregoing. Without limiting the generality of the foregoing, each of the [s]ellers . . . hereby agrees to defend . . . the [b]uyers . . . from and against any claim . . . cost or expense (including, without limitation, reasonable attorneys' fees) arising directly out of: (1) any debt, liability or obligation of any or all of the [s]ellers, the Company and the LLC, or other debt, liability or obligation, arising out of the ownership, use or operation of the assets and business of the Company or the LLC prior to the Closing other than those disclosed in the financial statements of the Company and the LLC provided to [the] [b]uyer[s] or otherwise notified to [b]uyer[s] in writing prior to the Closing; (2) any and all taxes attributable to any pre-Closing tax period except to the extent such taxes are disclosed in the financial statements of the Company or the LLC provided to [the] [b]uyer[s] or otherwise notified to [the] [b]uyer[s] in writing prior to the Closing . . . .

In March 2012, the Russian Ministry of Health informed ITA that the aspirin it delivered did not meet certain standards for dissolution. Pristine claimed the aspirin Cispharma manufactured and provided to ITA was defective. Cispharma disputed the claim.

A-4453-18T1

In May 2013, Pristine filed a complaint against Cispharma seeking damages for losses arising from the allegedly defective aspirin. Pristine thereafter amended the complaint and added certain Cispharma officers and employees, including respondents, as defendants. In July 2014, respondents informed Shah, Patel, Desai and the other sellers of the Cispharma shares that they were seeking indemnification pursuant to the Purchase Agreement for the expenses, damages, and liability related to the defense of Pristine's claims.

Respondents later filed a motion in the trial court to dismiss Pristine's claims. The trial court denied the motion. In July 2015, respondents filed an answer, defenses, crossclaims, and a third-party complaint alleging that Shah, Patel, Desai and the other sellers of the Cispharma shares breached the Purchase Agreement.

Respondents claimed these parties made false and misleading statements that induced them to purchase the Cispharma shares. They asserted a claim against Shah, Patel, Desai and the other sellers for indemnification for any liability or loss arising from Pristine's claims against them, as well as the attorney's fees and costs incurred in defense of those claims.

Respondents also asserted claims against Venkat Kakani (Kakani), the Chief Executive Officer (CEO) of Pristine. Respondents alleged that before they

6

acquired the Cispharma shares, Kakani acted as Cispharma's CEO and supervised production of the allegedly defective aspirin. Respondents further alleged Kakani made false and misleading statements, which induced them to enter the Purchase Agreement.

Thereafter, Desai filed an answer to respondents' claims and a third-party complaint naming certain officers and employees of Cispharma, including respondents, as defendants. Respondents later renewed their motion to dismiss Desai's claims, and filed a motion for summary judgment on Pristine's claims. In January 2019, the judge granted respondents' motions and dismissed Desai's third-party complaint and Pristine's claims.

In February 2019, respondents filed a partial motion for summary judgment on their indemnification claims against Cispharma, Desai, Patel, and Shah, seeking attorney's fees and costs. On March 15, 2019, the judge heard oral argument on the motion and placed his decision on the record. The judge found respondents were entitled to indemnification under the Purchase Agreement and directed them to submit a certification detailing the attorney's fees and costs incurred in the litigation. The judge memorialized his decision in an order dated March 15, 2019. On that date, the judge also entered default against Cispharma.

A-4453-18T1

On April 18, 2019, the judge considered respondents' application for attorney's fees and costs and placed his decision on the record. The judge found the fees and costs sought were reasonable. The judge noted that the litigation was "very scientific and complex" and required an understanding of the process in which aspirin is manufactured.

The judge also noted that many parties in the case had been self-represented and this "made [the case] burdensome and complicated." The judge found the results respondents obtained, specifically the dismissal of Pristine's claims, "were excellent." The judge awarded respondents attorney's fees and costs totaling $251,630.36.

After the judge rendered his decision, Desai and Patel filed opposition to respondents' motion for the award of attorney's fees and costs. The judge considered the late-filed opposition and placed his findings on the record. The judge found that respondents did not protract the litigation, as Desai and Patel claimed. The judge stated that Desai and Patel did not identify any specific entry in the attorney's fee request that was "redundant, unnecessary or unproductive." The judge memorialized his decision in an order dated April 30, 2019.

A-4453-18T1

In May 2019, appellants filed a motion for relief from and reconsideration of the court's April 30, 2019 order. Appellants argued that respondents were not entitled to indemnification because Pristine's claims did not arise out of Cispharma's business. They contended that respondents breached the Purchase Agreement and, therefore, could not enforce the Agreement. They also argued the award included attorney's fees and costs that were not incurred defending Pristine's claims.

Respondents opposed the motion and filed a cross-motion for additional attorney's fees and costs related to the motion. The judge heard oral argument and placed his decision on the record. The judge stated that "[t]he claims by Pristine against the [respondents] fell within the plain language of the indemnification provision and there is nothing in the plain language that would allow for the exclusion of those claims."

The judge noted that appellants did not provide sufficient evidence to show that respondents breached the Purchase Agreement. The judge also noted that the billings in the attorney's fee certification were "conservative given the complexity of [the] litigation." The judge did not exclude the fees and costs respondents incurred pursuing their indemnification claims against appellants.

The judge therefore denied appellants' motion for reconsideration and granted respondents' cross-motion. The judge awarded respondents $2,610 in attorney's costs and fees incurred opposing the motion. The judge memorialized his decision in orders dated June 7, 2019. This appeal followed.

Appellants argue that the motion judge erred by: (1) granting summary judgment to respondents on the indemnification claims under the Purchase Agreement; (2) failing to apply the "American Rule" on attorney's fees and awarding respondents fees and costs for pursuing their affirmative claims in the litigation; (3) denying their motion for reconsideration; and (4) awarding respondents attorney's fees and costs incurred for the summary judgment motion on the indemnification claims and opposing appellants' reconsideration motion.

II.

We first consider appellants' contention that the motion judge erred by granting respondents' motion for summary judgment on their claims for indemnification under the Purchase Agreement. Appellants contend respondents were not entitled to indemnification for the defense of the claims Pristine asserted against them. They also contend the judge erred by granting summary judgment and enforcing the indemnification provision of the Purchase

Agreement because there were genuine issues of material fact as to whether respondents breached the Agreement.

When reviewing an order granting a motion for summary judgment, we apply the standard the trial court applies when ruling on the motion. Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019). Summary judgment shall be granted if the record before the court shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c).

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. The trial court should grant summary judgment "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Here, the motion judge noted that the Purchase Agreement provides in pertinent part that the sellers of the Cispharma shares shall indemnify the buyers for "any claim, damage, liability, loss, cost or expense (including, without

A-4453-18T1

limitation, reasonable attorneys' fees) arising directly or indirectly out of" claims pertaining to "the ownership, use or operation of" Cispharma's assets and business prior to closing on the sale, except for claims disclosed in the company's financial statements or by written notice to the buyers. The judge stated that respondents incurred costs and expenses defending claims asserted by Pristine, which arose out of the operation of Cispharma's assets and business before respondents purchased the Cispharma shares.

The record supports the judge's conclusion that the Purchase Agreement required appellants to indemnify respondents for the costs and expenses they incurred defending Pristine's claims. Appellants argue, however, that respondents are not entitled to indemnification under the Purchase Agreement because Pristine's claims were based on the allegation that Cispharma produced and distributed the allegedly defective aspirin.

Appellants contend that Pristine failed to establish Cispharma manufactured the aspirin. According to appellants, evidence was produced that showed another entity manufactured the allegedly defective aspirin. Appellants therefore contend Pristine's claims did not arise from the operation of Cispharma's assets or business and respondents are not entitled to

12

indemnification under the Purchase Agreement for the defense of those claims. We disagree.

Although Pristine did not establish that Cispharma manufactured the allegedly defective aspirin, respondents were entitled under the Purchase Agreement to indemnification by the sellers of the Cispharma shares for the attorney's fees and costs they incurred in defending against those claims. The claims arose from the operation of Cispharma's assets and business before the closing on the sale of the Cispharma shares.

As the motion judge correctly noted, the indemnification provision of the Purchase Agreement does not exclude indemnification for claims that ultimately fail as a matter of law. Furthermore, while the trial court dismissed Pristine's claims on summary judgment, the court never found that the claims were frivolous. The judge correctly found respondents were entitled to indemnification for the costs and expenses incurred in defending the claims.

Appellants further argue the motion judge erred by granting summary judgment on the indemnification claims because respondents allegedly breached the Purchase Agreement. Again, we disagree.

"To establish a breach of contract claim, a [claimant] has the burden to show that the parties entered into a valid contract, that the [allegedly breaching

13

party] failed to perform [its] obligations under the contract and that the [claimant] sustained damages as a result." Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007). The materiality of a breach is a question of fact that requires determining whether the alleged failure "goes to the essence of the contract." Neptune Research & Dev., Inc., v. Teknics Indus. Sys., Inc., 235 N.J. Super. 522, 531 (App. Div. 1989).

Here, appellants claim respondents breached the Purchase Agreement by failing to guarantee two of Cispharma's outstanding loans. As noted, the Purchase Agreement provides that respondents "shall be included on the existing guarantees for these two loans, as shareholders and individuals, and the process to include the [respondents] on such documents shall commence immediately and at the discretion of the lenders."

However, appellants did not provide sufficient factual support for the claim that respondents breached this provision of the Purchase Agreement. Moreover, appellants did not show they sustained any loss as a result of respondents' alleged failure to guarantee the loans. Thus, they did not present sufficient evidence to establish that respondents breached a material term of the Purchase Agreement.

14

Appellants further contend respondents breached the Purchase Agreement by allegedly transferring without authorization certain Cispharma's assets to a company respondents own. They contend the transfer of the assets constituted a breach of the Purchase Agreement and Cispharma's shareholder agreement. In support of this allegation, appellants cite claims Desai asserted in a separate action. They did not, however, submit any evidence to the trial court in this case to substantiate the claim.

We therefore conclude the motion judge did not err by granting respondents' motion for summary judgment on their claim against appellants for indemnification under the Purchase Agreement. The judge correctly found the evidence on this issue was "so one-sided" that respondents were entitled to judgment as a matter of law. Brill, 142 N.J. at 540 (quoting Liberty Lobby, 477 U.S. at 252).

## III.

Next, appellants argue the motion judge erred by awarding respondent attorney's fees and costs related to the pursuit of affirmative claims against Kakani. We disagree.

As noted previously, the indemnification provision of the Purchase Agreement requires appellants, as sellers of the Cispharma shares, to indemnify

the buyer for any "claims or liabilities of whatever nature" that arise from the operation of Cispharma's assets or business prior to the closing on the sale, except for claims disclosed in the financial statements or by written notice to the buyers. Here, the record shows that appellants refused their request for a defense of Pristine's claims.

Thus, respondents were required to provide their own defense for these claims. As part of their defense strategy, respondents raised affirmative claims against Kakani, thereby seeking to limit or avoid liability. Respondents were entitled to indemnification for these costs and expenses because they arose "directly or indirectly" from Pristine's claims against them.

Appellants also argue that the judge erred by awarding respondents attorney's fees and costs for the summary judgment motion on their indemnification claim and the opposition to appellants' motion for reconsideration. Appellants contend there is no provision in the Purchase Agreement which authorizes the award of these fees and costs, and further, the award violates the "American Rule," which requires litigants to bear their own attorney's fees. Again, we disagree.

The Purchase Agreement provides in pertinent part that the sellers of the Cispharma shares must indemnify and hold the buyers harmless from any costs

or expenses, including reasonable attorney's fees, arising "directly or indirectly" out of "any material failure by the indemnifying party or parties to perform their obligations as set forth in this Agreement . . . ." The costs and expenses respondents incurred pursuing their affirmative claims against appellants for indemnification clearly come within the ambit of this provision of the indemnification clause.

We have considered appellants' other contentions and conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4453-18T1